# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

WILLIAM H.,[1]                    Case No. 1:20-cv-850
      Plaintiff,                   Litkovitz, M.J.

      vs.

COMMISSIONER OF                   **ORDER**
SOCIAL SECURITY,
      Defendant.

Plaintiff William H. brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review of the final decision of the Commissioner of Social Security (Commissioner) denying his application for disability insurance benefits (DIB). This matter is before the Court on plaintiff's Statement of Errors (Doc. 16), the Commissioner's response (Doc. 21), and plaintiff's reply (Doc. 22).

## I. Procedural Background

Plaintiff filed his application for DIB on March 2, 2018, alleging disability since December 3, 2017, due to cardiovascular disease status post quadruple bypass, diabetes mellitus, degenerative disc disease, sciatica, osteoarthritis of the knees and shoulders, hypertension, high cholesterol, gastroesophageal reflux disease (GERD), and carotid artery blockage. (Tr. 15, 177). The application was denied initially and upon reconsideration. Plaintiff, through counsel, requested and was granted a *de novo* hearing before administrative law judge (ALJ) Matthias D. Onderak on November 18, 2019. Plaintiff and a vocational expert (VE) appeared and testified at

---

[1] Pursuant to General Order 22-01, due to significant privacy concerns in social security cases, any opinion, order, judgment or other disposition in social security cases in the Southern District of Ohio shall refer to plaintiffs only by their first names and last initials.

the hearing.  (Tr. 36-61).  On December 17, 2019, the ALJ issued a decision denying plaintiff's

DIB application.  (Tr. 12-35).  This decision became the final decision of the Commissioner

when the Appeals Council denied plaintiff's request for review.

## II.  Analysis

### A.  Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable

physical or mental impairment that can be expected to result in death or that has lasted or can be

expected to last for a continuous period of not less than 12 months.  42 U.S.C. § 423(d)(1)(A).

The impairment must render the claimant unable to engage in the work previously performed or

in any other substantial gainful employment that exists in the national economy.  42 U.S.C. §

423(d)(2).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation

process for disability determinations:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

2

> 5) If the claimant can make an adjustment to other work, the claimant is not disabled.  If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009) (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 404.1520(b)-(g)).  The claimant has the burden of proof at the first four steps of the sequential evaluation process.  *Id.*; *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004).  Once the claimant establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful employment and that such employment exists in the national economy.  *Rabbers,* 582 F.3d at 652; *Harmon v. Apfel,* 168 F.3d 289, 291 (6th Cir. 1999).

**B.  The Administrative Law Judge's Findings**

The ALJ applied the sequential evaluation process and made the following findings of fact and conclusions of law:

> 1. [Plaintiff] meets the insured status requirements of the Social Security Act through December 31, 2019.
>
> 2. [Plaintiff] has not engaged in substantial gainful activity since December 3, 2017, the alleged onset date (20 CFR 404.1571 *et seq.*).
>
> 3. [Plaintiff] has the following severe impairments: coronary artery disease and coronary artery bypass grafting x4, atrial fibrillation, bilateral knee osteoarthritis, diabetes mellitus, hypertension, and spine disorder (20 CFR 404.1520(c)).
>
> 4. [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
>
> 5. After careful consideration of the entire record, [the ALJ] finds that

[plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except he can lift, carry, push, and pull 20 pounds occasionally and 10 pounds frequently; stand and/or walk 4 of 8 hours, and sit 6 of 8 hours. [Plaintiff] can occasionally push/pull and use of foot controls with his bilateral lower extremities. He can never climb ladders, ropes, or scaffolding but can occasionally climb ramps and stairs and occasionally crouch. [Plaintiff] can frequently stoop. He can never kneel and crawl. He must avoid concentrated exposure to extreme cold, heat, humidity, and avoid concentrated exposure to extreme amounts of fumes, odors, dust, gases, and areas of poor ventilation (in other words cannot work in levels of respiratory irritants similar to those found in chemical plants, automotive garages, coal mines, farms, or grain silos). [Plaintiff] must avoid unprotected elevations and being near dangerous moving machinery.

6. [Plaintiff] is unable to perform any past relevant work (20 CFR 404.1565).[2]

7. [Plaintiff] . . . was 47 years old, which is defined as a younger individual age 45-49, on the alleged disability onset date (20 CFR 404.1563).

8. [Plaintiff] has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that [plaintiff] is "not disabled," whether or not [plaintiff] has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering [plaintiff]'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [plaintiff] can perform (20 CFR 404.1569 and 404.1569a).[3]

11. [Plaintiff] has not been under a disability, as defined in the Social Security Act, from December 3, 2017, through the date of this decision (20 CFR 404.1520(g)).

(Tr. 17-31).

---

[2] Plaintiff's past relevant work was as a household appliance installer and maintenance machine repairer, both skilled and heavy exertion level (performed at the very heavy level). (Tr. 29, 56).

[3] The ALJ relied on the VE's testimony to find that plaintiff would be able to perform the requirements of representative light, unskilled occupations such as routing clerk (60,000 jobs nationally as eroded for sit/stand alternation), parking lot cashier (200,000 jobs nationally), and ticket seller (140,000 jobs nationally); and sedentary, unskilled positions of document preparer (25,000 jobs nationally), sorter (15,000 jobs nationally), and inspector (20,000 jobs nationally). (Tr. 30-31, 57-58).

4

### C.  Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards.  *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405  (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938).  Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).  In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole.  *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination.  Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers,* 582 F.3d at 651 (quoting *Bowen,* 478 F.3d at 746).

### D.    Specific Errors

Plaintiff raises three assignments of error: (1) the ALJ failed to identify a severe left shoulder impairment; (2) the ALJ failed to incorporate all of the limitations included in the

opinion of primary care physician Stephen Wilson, M.D.; and (3) the ALJ erred in finding that plaintiff was capable of more than sedentary work and, as a result, erred in not applying the Medical-Vocational Guidelines (Grid) Rule 201.14 in accordance with the Social Security Administration's Borderline Age Policy to find him disabled. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2; *Kirk v. Sec'y of H.H.S.*, 667 F.2d 524, 527 (6th Cir. 1981); Program Operations Manual System (POMS) DI 25015.006, https://secure.ssa.gov/poms.nsf/lnx/0425015006 (last visited March 3, 2022).[4]

1. Step two of the sequential evaluation

Plaintiff argues that his left shoulder impairment caused more than a slight abnormality that was expected to last for at least 12 months. Plaintiff points to his treatment with orthopedic surgeon Krishna Reddy, M.D., beginning in May 2019 (Tr. 1416-20, 1533-35) and MRI imaging (Tr. 1354-56) that reflected what appeared to be a SLAP tear, partial cuff tear, and mild joint arthritis (Tr. 1533-34) as demonstrating the severity of this impairment. Finally, plaintiff argues that the ALJ improperly characterized his testimony to conclude that this impairment was not severe.

The Commissioner responds that the treatment records referenced by plaintiff suggest that he considered his low back pain more severe than his shoulder pain. The Commissioner points to another treatment record from August 2019, after plaintiff began shoulder treatment with Dr. Reddy, which is devoid of any reference to shoulder issues. Finally, the Commissioner

---

[4] The POMS is used internally by employees of the Social Security Administration in evaluating Social Security claims. *Davis v. Sec'y of H.H.S.*, 867 F.2d 336, 340 (6th Cir. 1989). It is persuasive but does not have the force and effect of law. *Id.*

argues that regardless of whether the shoulder impairment was severe, any error is harmless because the ALJ considered plaintiff's shoulder impairment in his decision.

The regulations define a "severe" impairment or combination of impairments as one that significantly limits the physical or mental ability to perform basic work activities.  20 C.F.R. § 404.1520(c).  Basic work activities relate to the abilities and aptitudes necessary to perform most jobs, such as the ability to perform physical functions and the mental abilities to use judgment, respond to supervisors, and deal with changes in the work setting.  20 C.F.R. § 404.1522(b).  An impairment is considered "severe" unless "the [claimant's] impairment(s) has no more than a minimal effect on his or her physical or mental ability(ies) to perform basic work activities." SSR 85-28,[5] 1985 WL 56856, at *3.  "[D]isability is determined by the functional limitations imposed by a condition, not the mere diagnosis of it."  *Hill v. Comm'r of Soc. Sec.*, 560 F. App'x 547, 551 (6th Cir. 2014).  *See also Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) (holding that the diagnosis of an impairment "says nothing about the severity of the condition").

The claimant's burden of establishing a "severe" impairment at step two is "*de minimis*." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 325 (6th Cir. 2015) (citing *Higgs*, 880 F.2d at 862).  "[A]n impairment can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education, and experience."  *Id.* (quoting *Higgs*, 880 F.2d at 862).

---

[5] "Social Security Rulings do not have the force and effect of law, but are 'binding on all components of the Social Security Administration' and represent 'precedent final opinions and orders and statements of policy and interpretations' adopted by the Commissioner."  *Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 272 n.1 (6th Cir. 2010) (quoting 20 C.F.R. § 402.35(b)(1)).

Once "an ALJ determines that one or more impairments is severe, the ALJ must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not severe." *Singleton v. Comm'r of Soc. Sec.*, 137 F. Supp. 3d 1028, 1033 (S.D. Ohio 2015) (internal quotation marks omitted) (quoting *Fisk v. Astrue*, 253 F. App'x 580, 583 (6th Cir. 2007) (citing SSR 96-8p, 1996 WL 374184, at *5 (July 2, 1996))). Where the ALJ finds at least one severe impairment, the ALJ's failure to find additional severe impairments at step two is not reversible error where the ALJ considers the claimant's impairments—both severe and non-severe—in the remaining steps of the disability determination. *Maziarz v. Sec'y of H.H.S.*, 837 F.2d 240, 244 (6th Cir. 1987); *see also Fisk*, 253 F. App'x at 583-84. "So long as the ALJ finds at least one severe impairment and analyzes all impairments in the following steps, the characterization of other impairments as severe or non-severe is 'legally irrelevant.'" *Deaner v. Comm'r. of Soc. Sec.*, 840 F. App'x 813, 817 (6th Cir. 2020) (quoting *Anthony v. Astrue*, 266 F. App'x 451, 457 (6th Cir. 2008)). This rule acknowledges that an ALJ "properly could consider claimant's [non-severe impairments] in determining whether claimant retained sufficient residual functional capacity to allow him to perform substantial gainful activity." *Maziarz*, 837 F.2d at 244.

The Court finds that the ALJ considered plaintiff's shoulder impairment in his decision, and any error in his assessment of the severity of that impairment is therefore not reversible. The ALJ discussed plaintiff's treatment with Dr. Reddy (Tr. 18, referring to Tr. 1586-87 (May 2019) and Tr. 1355-56 (June 2019)), plaintiff's testimony that he did not plan to pursue further shoulder treatment (Tr. 18, referring to Tr. 47-48), injection therapy administered in May 2019

(Tr. 25, referring to Tr. 1587-88), and improvement reported during physical therapy sessions (Tr. 25, referring to Tr. 1536 (July 2019), Tr. 1544-45 (June 2019)).  *See Maziarz*, 837 F.2d at 244.

In any event, there is substantial evidence in the record to support the ALJ's decision that plaintiff's shoulder impairment was not severe.  At a primary care visit in August 2019 following plaintiff's initial shoulder treatment and testing, the progress notes mention "severe back pain" but no reported or observed shoulder issues.  (Tr. 1734-37).  Dr. Reddy's treatment notes reflect that plaintiff's back pain was his primary issue.  (*See* Tr. 1533 (Plaintiff "[c]ontinues to have pain in [his shoulder and low back] but his low back is pretty painful. . . .  More than his shoulder, he is concerned about back pain."), Tr. 1535 ("[Plaintiff's] main complaint is that of back pain. . . .  Patient is not keen on any further interventions for his shoulder at this point in time.")).  Plaintiff also testified that while his physical therapist did not recommend shoulder surgery, he "quit" going to physical therapy and would do "nothing" to treat his shoulder impairment.  (Tr. 47-48).  The ALJ noted this testimony when he concluded at step two that plaintiff's shoulder impairment would not likely last for 12 months because it should "respond to treatment[.]"  (Tr. 18).  Plaintiff has not met his burden "of showing that he had a severe impairment that met the twelve-month duration requirement."  *Harley v. Comm'r of Soc. Sec.*, 485 F. App'x 802, 803 (6th Cir. 2012) (citing *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999); *Higgs*, 880 F.2d at 863).  Plaintiff's first assignment of error is overruled.

## 2. Medical opinion evidence

Plaintiff argues that the ALJ erred in his evaluation of Dr. Wilson's August 2019 opinion[6] (Tr. 837-42)—in particular, Dr. Wilson's opinions that plaintiff could stand/walk for up to 15 minutes for a total of only 30 minutes per day and would be off task 75-100% of the day (Tr. 838, 841).[7] Plaintiff argues that the stand/walk limitation is supported by the record and should have been incorporated into the ALJ's residual functional capacity (RCF) determination. Plaintiff further argues that the ALJ should not have dismissed Dr. Wilson's opinion that he would be off-task 75-100% of the day; and even if that opinion was unsupported, it should not have caused the ALJ to discount other portions of Dr. Wilson's opinion.

The Commissioner argues in response first, as a general matter, that the ALJ's decision reflects consideration of the entire record because his RCF for plaintiff included greater restrictions than what were endorsed by the state agency physicians. As to Dr. Wilson's opinion specifically, the Commissioner argues that the ALJ's decision that it was not persuasive is supported by substantial evidence because the ALJ discussed its supportability and consistency with the record overall.

---

[6] Dr. Wilson also provided an April 19, 2019 opinion. (Tr. 945). Although the ALJ was not required to separately articulate his consideration of multiple medical opinions from a single source, 20 C.F.R. § 404.1520c(b)(1), he did so here. (*See* Tr. 28). Plaintiff does not object to the ALJ's evaluation of Dr. Wilson's April 2019 opinion and any argument related thereto is deemed waived. *See Kuhn v. Washtenaw Cnty.*, 709 F.3d 612, 624 (6th Cir. 2013) ("This court has consistently held that arguments not raised in a party's opening brief, as well as arguments adverted to in only a perfunctory manner, are waived.") (citation omitted).

[7] Plaintiff's argument in this assignment of error is developed as to the stand/walk limitation in Dr. Wilson's opinion. (*See* Doc. 16 at PAGEID 1832 ("[The ALJ] does not provide any reason why the standing/walking limitations from Dr. Wilson are not consistent with the record and the documented knee and lower back orthopedic conditions."); Doc. 22 at PAGEID 1864). Plaintiff addresses the off-task portion of Dr. Wilson's opinion to a lesser extent. (*See* Doc. 16 at PAGEID 1832-33; Doc. 22 at PAGEID 1864). Any arguments about the remaining aspects of Dr. Wilson's August 2019 opinion, however, are deemed waived. *See Kuhn*, 709 F.3d at 624.

For claims filed on or after March 27, 2017, new regulations apply for evaluating medical opinions. *See* 20 C.F.R. § 1520c (2017); *see also* 82 Fed. Reg. 5844-01, 2017 WL 168819 (Jan. 18, 2017) (technical errors corrected by 82 Fed. Reg. 15132-01, 2017 WL 1105368 (Mar. 27, 2017)). These new regulations eliminate the "treating physician rule" and deference to treating source opinions, including the "good reasons" requirement for the weight afforded to such opinions.[8] *Id.* The Commissioner will "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)[9], including those from your medical sources." 20 C.F.R. § 41520c(a). Rather, the Commissioner will consider "how persuasive" the medical opinion is. 20 C.F.R. § 1520c(b).

In determining the persuasiveness of a medical opinion, the ALJ considers five factors: (1) supportability, (2) consistency, (3) relationship with the claimant, including length of treatment relationship, frequency of examinations, purpose of the treatment relationship, and examining relationship, (4) specialization, and (5) other factors that tend to support or contradict a medical opinion. 20 C.F.R. § 1520c(c)(1)-(5). The most important factors the ALJ must consider are supportability and consistency. 20 C.F.R. § 1520c(b)(2). With respect to the supportability factor, "[t]he more relevant the objective medical evidence[10] and supporting

---

[8] For claims filed prior to March 27, 2017, a treating source's medical opinion on the issue of the nature and severity of an impairment is given controlling weight if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). *See also Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013). "The Commissioner is required to provide 'good reasons' for discounting the weight given to a treating-source opinion." *Id.* (citing 20 C.F.R. § 404.1527(c)(2)).

[9] A "prior administrative medical finding" is defined as "[a] finding, other than the ultimate determination about whether the individual is disabled, about a medical issue made by an MC [medical consultant] or PC [psychological consultant] at a prior administrative level in the current claim." 82 Fed. Reg. 5844-01, 2017 WL 168819, at *5850. For clarity, the Court will refer to the limitations opined by the state agency reviewers as "assessments" or "opinions."

[10] Objective medical evidence is defined as "signs, laboratory findings, or both." 82 Fed. Reg. 5844-01, 2017 WL

explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions . . . will be."  20 C.F.R. § 1520c(c)(1).  Similarly, "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s). . . ."  20 C.F.R. § 1520c(c)(2).  The ALJ is required to "*explain* how [he/she] considered the supportability and consistency factors for a medical source's medical opinions" in the written decision.  20 C.F.R. § 1520c(b)(2) (emphasis added).  Conversely, the ALJ "may, but [is] not required to, explain" how he/she considered the relationship, specialization, and other factors set forth in paragraphs (c)(3) through (c)(5) of the regulation.  *Id.*  However, where two or more medical opinions or prior administrative findings about the same issue are equally persuasive, the ALJ must articulate how he or she "considered the other most persuasive factors in paragraphs (c)(3) through (c)(5). . . ." 20 C.F.R. § 404.1520c(b)(3).  Finally, the ALJ is not required to articulate how he or she considered evidence from nonmedical sources.  20 C.F.R. § 404.1520c(d).

The ALJ found that Dr. Wilson's August 2019 opinion was:

> not supported by the records from Dr. Wilson, examination findings from Dr. Wilson as discussed above, or the other treating records from pain management and the Veterans Administration.  . . .  The opinion is not supported by sufficient documentation of evidence, clear articulation for the basis of the opinion, and with finding[s] consistent with other objective medical evidence of record.

(Tr. 28).

Dr. Wilson provided the following support for his stand/walk limitation: "Due to back and knee arthritis [plaintiff] cannot stand for long periods of time."  (Tr. 838).  Plaintiff points to

---

168819, at *5850.

three records that support this limitation: two 2018 knee MRIs (Tr. 873-75), a 2018 lumbar spine MRI (Tr. 696-98), and a 2019 lumbar spine MRI (Tr. 1356-58). A review of these records, however, alongside the ALJ's detailed discussion of the medical record, reflects that the ALJ's evaluation of the persuasiveness of Dr. Wilson's stand/walk opinion is supported by substantial evidence.

Beginning with plaintiff's back impairments, the ALJ thoroughly reviewed and discussed imaging studies, clinical examination findings, and plaintiff's treatments in assessing whether Dr. Wilson's opinion was consistent with other record evidence. The ALJ highlighted plaintiff's 2018 lumbar spine MRI, which reflected "no significant spinal canal stenosis" and only "mild to moderate multilevel neural foraminal narrowing." (*See* Tr. 22, referring to Tr. 698). The ALJ also noted plaintiff's 2019 lumbar spine MRI, which reflected "very mild multilevel disc disease" and "no impinging stenosis. . . ." (Tr. 27,[11] referring to Tr. 1358).

With respect to plaintiff's presentations on physical examination, the ALJ noted that in March 2018, plaintiff exhibited largely normal gait; only mildly reduced flexion, extension, and lateral bending; only mild tenderness without muscle spasm; 5/5 strength of the lower extremities; and negative straight leg raise test bilaterally. (*See* Tr. 22, referring to Tr. 667). The ALJ noted that in April 2018, plaintiff exhibited normal range of motion, negative straight leg test, and no tenderness. (*See id.*, referring to Tr. 650). The ALJ also noted that in April 2018, plaintiff reported to Dr. Wilson that he was doing aerobic exercise five times per week and exhibited normal musculoskeletal range of motion and no edema. (*See id.*, referring to Tr. 805,

---

[11] The ALJ refers here to the "July 2019 x-ray," but the Court believes that he meant to refer to the June 2019 lumbar spine MRI based on his description of the impression. (*Compare* Tr. 27 *with* Tr. 1356-58).

808).  The ALJ noted that while plaintiff exhibited an antalgic gait, decreased range of lumbar motion, and pain with flexion and extension in June 2018, his straight leg raise test was negative bilaterally, there was no significant tenderness, his lower extremity strength was 5/5, and he expressed a desire for more conservative low back pain treatment.  (*See* Tr. 23 referring to Tr. 846-47).  The ALJ also considered an August 2018 VA Disability Benefits Questionnaire in which that agency determined that plaintiff's low back impairment did not impact his ability to work.  (*See id*, referring to Tr. 1685).

In examining the consistency of Dr. Wilson's opinion with plaintiff's response to treatment, the ALJ noted that in October 2018, following a lumbar epidural steroid injection, plaintiff reported 90% improvement and normal strength, tone, gait, and range of motion.  (*See* Tr. 24, referring to Tr. 878, 881).  The ALJ acknowledged plaintiff's October and November 2018 reports of only short-term, 80% improvement with facet injections.  (*See id.* referring to 886, 896).  The ALJ also noted, however, that at these same visits, plaintiff reported improvement with bending, twisting, and the activities of daily living; improvement in pain from a 6/10 to a 3/10; and normal strength, tone, gait, and range of motion.  (*See id.*, referring to Tr. 886, 889, 896, 899).  The ALJ noted that in January 2019, plaintiff reported an 80% improvement in axial back pain after radiofrequency lesioning; improvement in his activities of daily living; and normal tone, gait, and range of motion.  (*See id.*, referring to Tr. 909, 912).  The ALJ noted that in February 2019, plaintiff reported a 70% reduction in low back pain after an injection; improvement with walking; and normal strength, tone, gait, and range of motion.  (*See id.*, referring to Tr. 917, 920).  Finally, the ALJ noted that plaintiff did not regularly use pain

14

medications.  (*See* Tr. 27, referring to Tr. 46 (testimony in which plaintiff explains that he takes primarily Tylenol for his pain)).

To the extent Dr. Wilson's stand/walk opinion was based on the alleged severity of plaintiff's knee impairments, the ALJ also thoroughly reviewed and discussed imaging studies, surgeries, and clinical examination findings in assessing the opinion's consistency with other record evidence.  The ALJ noted that in March 2018, plaintiff exhibited mild knee joint effusion and moderate tenderness, but plaintiff's knee x-rays did not reflect significant issues.  (*See* Tr. 22, referring to Tr. 282-83).  The ALJ acknowledged that a subsequent left knee MRI reflected a flap tear of the posterior horn and patellofemoral arthropathy with intermediate to high grade chondromalacia of the medial and lateral trochlea.  (*See id.*, referring to Tr. 875).  The ALJ noted that this was later assessed as a medial meniscus tear, synovitis, and patellofemoral arthritis (*see id.*, referring to Tr. 666), and plaintiff underwent left knee surgery in April 2018 (*see id.*, referring to Tr. 656).  The ALJ noted that plaintiff did well after surgery and was cautioned against overuse.  (*See id.*, referring to Tr. 650).  The ALJ noted that aside from an aggravation due to helping a family member with lifting, plaintiff improved during May 2018, with pain levels at 3/10.  (*See id.*, referring to Tr. 630, 634).

The ALJ also acknowledged that in August 2018, a right knee MRI reflected an inflamed flap tear of the posterior horn of the medial meniscus, an active tear in the medial paratibial gutter, several small foci of grade four chondromalacia in the patellofemoral compartment, grade 2-3 chondromalacia in the medial lateral tibial femoral compartments, and chronic patellar maltracking.  (*See* Tr. 23, referring to Tr. 873-74).  The ALJ also considered an August 2018 VA

15

Disability Benefits Questionnaire in which that agency determined that plaintiff's knee impairments did not impair any occupational tasks, such as standing or walking.  (*See id.*, referring to Tr. 1675).  The ALJ noted that two months after plaintiff's right knee surgery in August 2018 (Tr. 24, referring to Tr. 853-55), plaintiff reported some difficulty with stairs, but on examination, "[o]verall [plaintiff's] knee [was] pretty good[,]" he had "decent strength" and "full range of motion[,]" and his knees were generally "very stable and functioning well."  (*See id.*, referring to Tr. 849 (quoted language)).  The ALJ further noted that in May 2019, plaintiff's knees were stable but x-rays reflected bilateral knee pain likely referred from the lumbar spine and left knee mild to moderate medial patellofemoral osteoarthritis.  (*See* Tr. 25, referring to Tr. 1584-87).

In sum, the ALJ's decision reflects that he properly compared Dr. Wilson's stand/walk opinion to the other record evidence related to plaintiff's back and knee impairments and reasonably determined that Dr. Wilson's opinion on plaintiff's physical limitations was inconsistent with the evidence from other medical sources.

The ALJ also thoroughly evaluated the supportability of Dr. Wilson's stand/walk opinion.  The ALJ summarized the evidence regarding plaintiff's knee impairments, which he concluded supported plaintiff's stand/walk limitation to 4 hours in an 8-hour workday but not more.  (*See* Tr. 26 ("[N]o objective evidence of any significant limitations from his knees . . . preclude[s] standing and walking 4 of 8 hours. . . .  [Plaintiff's] history of knee surgeries, imaging, physical examinations, and presentations in the record support the reduced standing and walking of the residual functional capacity[.]")).  Later in his decision, the ALJ concluded that

16

Dr. Wilson's August 2019 opinion was "not supported by sufficient documentation of evidence" or "clear articulation for the basis of the opinion. . . ." (Tr. 28). As noted above, the only explanation given by Dr. Wilson to support his stand/walk opinion was that plaintiff's "back and knee arthritis" kept plaintiff from standing for long periods of time. (Tr. 838). The ALJ reasonably determined that Dr. Wilson's opinion lacked support in his own treatment records, especially when viewed in comparison to the record as a whole given plaintiff's imaging studies, surgeries, clinical examination findings, and response to treatment outlined above. The ALJ's conclusion finding Dr. Wilson's opinion not persuasive is substantially supported by the record.

In addition, while the ALJ adopted the stand/walk limitation endorsed by the state agency physicians, Maria Congbalay, M.D., and William Bolz, M.D., his inclusion of other limitations in plaintiff's RFC reflects due consideration of plaintiff's knee impairments. As relevant here, Drs. Congbalay and Bolz determined that plaintiff could perform a reduced range of light work, during which he could stand/walk for 4 hours in an 8-hour workday; occasionally push and pull with the left lower extremity; never climb ladders, ropes, or scaffolding; occasionally climb ramps and stairs, balance, kneel, and crouch; frequently stoop; and never crawl. (Tr. 68, 80). The ALJ, however, further limited plaintiff to occasional pushing and pulling with *both* extremities and never kneeling. (Tr. 19-20, 28).

Finally, the ALJ's decision not to incorporate Dr. Wilson's 75-100% off-task percentage into plaintiff's RFC is supported by substantial evidence. The ALJ found that this "fairly extreme" limitation was not supported by Dr. Wilson's own records and findings or other treatment records. (*See* Tr. 28). As summarized above, the ALJ referred to various reports of

17

improvement (*see, e.g.*, Tr. 24, referring to Tr. 849, 878, 881, 917, and 920), normal examination findings (*see, e.g.*, Tr. 22, referring to Tr. 650 and 846-47), and the VA's determination that plaintiff was not functionally limited by his knee or back impairments (*see* Tr. 23, referring to Tr. 1675 and 1685).  Plaintiff does not point to any particular aspects of the record that would compel adherence to this portion of Dr. Wilson's opinion.  Instead, plaintiff's argument is limited to refuting the following remark by the ALJ during the hearing: "The problem I have with Dr. Wilson is I don't [sic] where he came with that.  It's extreme limitations with off task 100%.  The claimant is driving a car.  He should be in a home."  (*See* Doc. 16 at PAGEID 1832-33, referring to Tr. 60 (quoted language)).  Plaintiff argues that it is incorrect to equate this off-task percentage "with the inability to perform any task at any time."  (*Id.* at PAGEID 1833).  Notwithstanding this remark, however, the ALJ's decision finding this part of Dr. Wilson's opinion not persuasive is based on substantial evidence.

For all of the foregoing reasons, plaintiff's second assignment or error is overruled.

### 3.  RFC for more than sedentary work

Plaintiff states that after the hearing, the ALJ offered to render a fully favorable decision based on Rule 201.14 of the Grid if plaintiff agreed to amend his onset date from December 3, 2017 to December 1, 2019.  At that time, plaintiff was a few months from turning 50 years of age (February 2020).  If plaintiff was limited to sedentary work and considered an individual "closely approaching advanced age" (through the application of the Borderline Age Policy), Grid Rule 201.14 would direct a finding of "disabled."  Plaintiff states he did not agree to amend his onset date, and the ALJ did not make a favorable ruling.  Plaintiff argues that the ALJ's

expressed willingness to find him disabled based on an amended onset date proves that the ALJ "clearly felt the evidence supported that the claimant was limited to sedentary work" and the ALJ only withheld that finding because plaintiff would not consent to an amended onset date. (Doc. 16 at PAGEID 1834). Plaintiff further argues that the ALJ's stated reason for declining to apply the Borderline Age Policy (plaintiff's failure to report several years' worth of income) is not addressed by the Policy.

The Grid applies at the final step of the sequential disability analysis. *See* 20 C.F.R. § 404.1569. The Grid may be used to obtain the ultimate conclusion of disability when the findings of fact as to plaintiff's age, education, work experience, and residual functional capacity correspond precisely with the components of the relevant rule. 20 C.F.R. Subpart P, App. 2, § 200.00; *Kirk*, 667 F.2d at 528-29. Each of the Commissioner's findings concerning the individual's age, education, work experience, and residual functional capacity must be supported by substantial evidence. *Id.* When the Grid is applicable, the Commissioner may obtain a directed conclusion of nondisability and may take administrative notice that jobs exist in the national economy that plaintiff can perform. *Heckler v. Campbell*, 461 U.S. 458 (1983). If plaintiff suffers from a nonexertional impairment that restricts performance of a full range of work at the appropriate residual functional capacity level, the Grid is inapplicable and the Commissioner must rely on other evidence to carry her burden. 20 C.F.R. Subpart P, App. 2, § 200.00(e).

Plaintiff essentially contends that the RFC finding for light work is not supported because the ALJ "clearly felt the evidence supported that the claimant was limited to sedentary work" by

offering a favorable disability finding premised on consent to an amended onset date.  (Doc. 16 at PAGEID 1834).  Therefore, the Court must first consider whether the ALJ's determination of plaintiff's RFC for light work is supported by substantial evidence.  If so, whether plaintiff could have been entitled to disability benefits under Grid Rule 201.14 for sedentary work under the Borderline Age Policy when he turned 50 years old in February 2020 (after his insured status had already lapsed) is legally irrelevant.

A claimant's RFC is an assessment of "the most [a claimant] can still do despite [his] limitations."  20 C.F.R. § 404.1545(a)(1).  A claimant's RFC assessment must be based on all the relevant evidence in his case file.  (*Id.*)  The governing regulations[12] describe five different categories of evidence: (1) objective medical evidence, (2) medical opinions, (3) other medical evidence, (4) evidence from nonmedical sources, and (5) prior administrative medical findings.  20 C.F.R. § 404.1513(a)(1)-(5).  With regard to two of these categories—medical opinions and prior administrative findings—an ALJ is not required to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s) including those from the claimant's medical sources."  20 C.F.R. § 404.1520c(a).

As discussed in Part II(D)(2), the ALJ carefully considered the objective medical evidence, medical opinions, and prior administrative medical findings in his decision.  Plaintiff does not point to medical evidence in the record that compels a different RFC determination.  Instead, plaintiff appears to rely on the ALJ's alleged offer to find plaintiff disabled as of December 1, 2019, as demonstrating that the ALJ actually found plaintiff limited to sedentary

---

[12] Plaintiff's applications were filed after March 27, 2017.  Therefore, they are governed by revised regulations redefining how evidence is categorized and evaluated when an RFC is assessed.  *See* 20 C.F.R. §§ 404.1513(a), 404.1520c.

work and only decided otherwise because plaintiff would not agree to amend his onset date. There is no evidence that the ALJ made an improper offer or that the ALJ's decision finding plaintiff capable of a range of light work was based on plaintiff's decision to not amend his alleged onset date. Plaintiff's arguments to this Court and to the Appeals Council (Tr. 16) are not evidence the Court may consider when assessing whether the ALJ's decision is supported by substantial evidence. *See, e.g.*, *Morales v. Comm'r of Soc. Sec.*, 799 F. App'x 672, 675-76 (11th Cir. 2020). The ALJ's determination of plaintiff's RFC is based on substantial evidence, and plaintiff's third assignment of error is overruled.

## III. Conclusion

Based on the foregoing, plaintiff's Statement of Errors (Doc. 16) is **OVERRULED**, and the Commissioner's non-disability finding is **AFFIRMED**. **IT IS THEREFORE ORDERED** that judgment be entered in favor of the Commissioner and this case is closed on the docket of the Court.

Date: 3/17/2022

Karen L. Litkovitz
United States Magistrate Judge